## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00475-PAB

STARFALL EDUCATION FOUNDATION,

Plaintiff,

v.

TENCENT HOLDINGS LIMITED and
PROXIMA BETA PTE. LIMITED,

Defendants.

## DEFENDANT PROXIMA BETA'S MOTION TO DISMISS THE
## SECOND AMENDED COMPLAINT

The term "starfall" has appeared in literature across various genres for over a century,

serving, for example, as the title of John Cunningham's 1960 novel *Starfall* and as the name of a

castle in George Martin's 1996 bestseller *A Game of Thrones*. And yet now, under the guise of

trademark law, Plaintiff—which started to use the term for a children's website in 2002—seeks to

monopolize and monetize the term by demanding more than $1 million from Defendants Tencent

Holdings Limited ("Tencent Holdings") and Proxima Beta Pte. Limited ("Proxima Beta"). Worse

still, Plaintiff makes these demands while disseminating irrelevant and defamatory statements in

its pleadings and press releases.

Proxima Beta used the term "starfall" as the title for a three-month season of the video

game Delta Force because the season's mission centered on satellites that fell from the sky like

shooting—or falling—stars. Proxima Beta did not use the term as a trademark, and even if it did,

no reasonable consumer would confuse the season title with Plaintiff's purported trademark.

Plaintiff's pleadings suggesting otherwise are deficient.

1

As an initial matter, Plaintiff cannot bring Proxima Beta into this forum. Proxima Beta is a Singapore company with its headquarters in Singapore. Further, Proxima Beta has no requisite contacts with Colorado that could establish personal jurisdiction. Plaintiff's claims should be dismissed on this basis alone.

Moreover, Plaintiff cannot maintain claims for trademark infringement. Plaintiff alleges that Proxima Beta infringed its trademark rights with the season title. First, no one would confuse Proxima Beta's brief—and now inactive—season title in a tactical first-person shooter game with Plaintiff's trademark, especially considering that Plaintiff's purported mark largely appears alongside animations covered in bright primary colors. Second, Proxima Beta's season title is not source-identifying. Under either *Rogers* or *Stouffer*, Proxima Beta's non-trademark use does not infringe Plaintiff's alleged rights. Therefore, Plaintiff's claim for trademark infringement and the other claims that derive therefrom fail and should be dismissed.

Finally, Plaintiff's claims do not meet basic pleading standards. Plaintiff's Colorado Consumer Protection Act ("CCPA") claim, which sounds in fraud, fails to meet its Federal Rule of Civil Procedure Rule ("Rule") 9 pleading obligations. And Plaintiff's deficient group pleading fails to put Proxima Beta on notice of the allegations against it. To limit motion practice, Proxima Beta told Plaintiff that its First Amended Complaint ("FAC") was deficient. However, the same issues remain in the Second Amended Complaint ("SAC"). Proxima Beta respectfully requests that the Court dismiss all claims without leave to amend, since a fourth opportunity to plead would be futile and a waste of judicial and party resources.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     Proxima Beta Publishes Delta Force.**

Proxima Beta is the game publisher of Delta Force, a team-based tactical shooter game. Ex. A, Declaration of Jingshen Wei ("Decl.") at ¶ 2.  The development of Delta Force started on April 27, 2020.  *Id.*  After four years of significant effort, the Chinese version of Delta Force was released on September 26, 2024 for personal computer ("PC") and mobile video gaming.  *Id*.  On December 5, 2024 and April 21, 2025, Delta Force published the global PC and mobile versions of Delta Force, respectively.  *Id.*  Proxima Beta offers free licenses to play Delta Force.  *Id.* at ¶ 3.

Every few months, Proxima Beta updates Delta Force with the release of a new season.  *Id.* at ¶ 4.  Characters and other features carry over from season to season, but the storyline and settings change to match the new theme and mission.  *Id.*  In less than a year since Delta Force was first published, five seasons have been released: S1: Genesis, S2: Relink, S3: Starfall, S4: Eclipse Vigil, and S5: Break.  *Id.* at ¶ 5.

Proxima Beta is a company registered in Singapore with its principal place of business located in Singapore.  *Id.* at ¶ 6.  Proxima Beta has no physical presence, business operations, business licenses, offices, employees, or bank accounts in Colorado or with any Colorado governmental entity.  *Id.* at ¶ 7.  Proxima Beta has not had meetings in Colorado with Colorado customers, partners, or vendors relating to Delta Force.  *Id.* at ¶ 8.  Proxima Beta does not have any contracts with Colorado businesses relating to Delta Force.  *Id.* at ¶ 9.  Proxima Beta has not used, does not use, and has no intention of using Delta Force to target Colorado consumers.  *Id.* at ¶ 10.  Proxima Beta does not inquire or track which state Delta Force players are from.  *Id.* at ¶ 11.  Nor does Proxima Beta act on such information.  *Id.*  Proxima Beta is not aware of any direct interactions with known Colorado residents through Delta Force's social media, website, or game.

*Id.* at ¶ 12.  Proxima Beta markets Delta Force globally and runs the same advertisements in all English-speaking countries where the game is accessible.  *Id.* at ¶ 13.  Accordingly, Proxima Beta has never specifically directed Delta Force marketing to Colorado residents, and Delta Force has no Colorado specific advertisements.  *Id.*

**B.      Plaintiff Takes Issue With A Season Title.**

At issue here is the title of season three of Delta Force.  Proxima Beta titled Delta Force's third season "Starfall" because the season's mission centered on satellites that fell from the sky like shooting—or falling—stars.  Decl. at ¶ 14.  Delta Force's third season lasted approximately three months, from January 18, 2025, until April 20, 2025.  *Id.* at ¶ 15.

Proxima Beta has never used the title as a trademark for Delta Force.  *Id.* at ¶ 16.  In fact, Proxima Beta has never sought trademark registration for this or any other Delta Force season title.  *Id.* at ¶ 17.  Proxima Beta's use and Plaintiff's use are visually distinct, and the parties' goods and services target different consumers, use different marketing channels, and have different purposes, aims, and goals.  Proxima Beta was not aware of Plaintiff or its goods before this dispute, *see id.* at ¶ 18, and did not intend to benefit from Plaintiff's purported trademark when naming season three of Delta Force.  *Id.* at ¶ 19.  Finally, Proxima Beta has not experienced any instances of confusion.  *Id.* at ¶ 20.  Plaintiff has likewise provided none.

**C.      Plaintiff Sues The Wrong Party And Other Pleading Deficiencies.**

Proxima Beta has explained to Plaintiff that its pleadings are deficient.  First, Plaintiff filed its initial complaint against Proxima Beta and Level Infinite Pte. Ltd ("Level Infinite").  Proxima Beta had to tell Plaintiff *four times* that Level Infinite is not an entity, including sending a screenshot demonstrating that a search for "Level Infinite" in a Singapore government business

database yields no hits.  Plaintiff did not remove Level Infinite as a party until the SAC, months after filing its original complaint and FAC.  *See* SAC, Dkt. 32-1.

Second, Plaintiff refers to Defendants only as a group.  The initial complaint grouped Proxima Beta and Level Infinite together as "Level Infinite."  The FAC, which added Tencent Holdings Limited, grouped Proxima Beta, Level Infinite, and Tencent Holdings together as "Tencent."  And in the SAC, Plaintiff grouped Proxima Beta and Tencent Holdings together as "Tencent."  The factual allegations barely changed from the initial complaint to the SAC—despite adding Tencent Holdings and subtracting Level Infinite.  *See* SAC, Dkt. No. 32-21 (redline between Plaintiff's FAC and SAC).

## ARGUMENT

### A.    The Court Should Dismiss Plaintiff's Claim For Lack Of Personal Jurisdiction.

Plaintiff bears the burden of demonstrating that the Court can exercise personal jurisdiction over Proxima Beta.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Colorado's long-arm statute extends jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here is a due process inquiry.  *Meany v. Atomic Protocol Sys. OU*, No. 23-CV-01582-PAB-MEH, 2024 WL 4135762, at *4 (D. Colo. Sept. 10, 2024).  Due process requires that Proxima Beta have sufficient minimum contacts with Colorado such that having to defend a lawsuit in Colorado does not offend traditional notions of fair play and substantial justice.  *Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984).

Plaintiff's jurisdictional showing for Proxima Beta and Tencent Holdings is limited to the following:

> This Court has personal jurisdiction over [Tencent Holdings and Proxima Beta] and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, [Tencent Holdings and Proxima Beta] markets its services using the STARFALL Mark in this District and consequently a significant part of the events giving rise to Starfall's claims occurred in this District.

SAC at ¶ 15. This sole allegation is insufficient to establish that Proxima Beta has minimum contacts with Colorado, and exercising personal jurisdiction over Proxima Beta in this matter would offend traditional notions of fair play and substantial justice.

### 1. This Forum Does Not Have General Personal Jurisdiction Over Proxima Beta.

Proxima Beta cannot be subject to general jurisdiction unless it is "essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Proxima Beta is at home in its place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017). Proxima Beta is a Singapore company with its principal place of business in Singapore. Decl. at ¶ 6. Thus, the Court lacks general personal jurisdiction over Proxima Beta.

### 2. This Forum Does Not Have Specific Personal Jurisdiction Over Proxima Beta.

Specific personal jurisdiction requires that the dispute arises from Proxima Beta's purposefully directed actions toward residents of this forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Plaintiff therefore "must show that the [Proxima Beta] deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (cleaned up). Specific personal jurisdiction over Proxima Beta must also comport with traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316.

When internet-based contacts are analyzed for specific personal jurisdiction, the fact that a website is accessible or marketed nationally (or globally) is insufficient, by itself, to establish jurisdiction. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."); *Vitality Apparel Holdings, Inc. v. Buffbunny LLC*, 1:24-cv-01395-GPG-SBP, Dkt. 35 at *4, 6 (D. Colo. June 13, 2025) ("Plaintiffs' remaining allegations and attested facts consist of nothing more than assertions that Buffbunny has a website that sells products nationally, including to Colorado consumers, and that Buffbunny markets these products. This is insufficient to support personal jurisdiction over Buffbunny."). Instead, courts "plac[e] emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum[.]" *Shrader*, 633 F.3d at 1240 (emphasis in original). Absent a plaintiff providing "evidence or substantive allegations … [of] purposefully directed relevant conduct to Colorado," specific personal jurisdiction is improper. *See Vitality Apparel Holdings, Inc.*, 1:24-cv-01395-GPG-SBP, Dkt. 35 at *6.

Plaintiff does not allege that Proxima Beta purposefully directed its website, products, or marketing to Colorado consumers. *See* SAC at ¶ 15. Instead, Plaintiff states vaguely that "Tencent markets its services … in this District," *see id.*, and while Proxima Beta does market its services globally, Plaintiff does not—and cannot—demonstrate that Proxima Beta has any purposeful contacts specifically directed to Colorado that give rise to its claims. Proxima Beta has no physical presence, business operations, business licenses, offices, employees, or bank accounts in Colorado or with any Colorado governmental entity, nor has Proxima Beta met in Colorado with Colorado

customers, partners, or vendors relating to Delta Force.  Decl. at ¶¶ 7-8.  Proxima Beta has never used and does not intend to use Delta Force to specifically target Colorado consumers.  *Id.* at ¶ 10.  Proxima Beta does not track or even inquire which United States state Delta Force players are from, so it does not act on any such information.  *Id.* at ¶ 11.  Proxima Beta is not aware of any direct interactions with known Colorado residents through the Delta Force social media, website, or game.  *Id.* at ¶ 12.  And Proxima Beta runs the same advertisements in all English-speaking countries where Delta Force is accessible.  *Id.* at ¶ 13.  Nothing is specially targeted to or designed for Colorado residents.  *Id.*

Finally, the exercise of personal jurisdiction over Proxima Beta offends traditional notions of fair play and substantial justice.  *See Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020) (outlining relevant factors).  First, defending an action in Colorado despite Proxima Beta's lack of contacts would significantly burden Proxima Beta.  *Id.* at 1232.  Second, there are no allegations of actual harm to Colorado consumers, so Colorado has no specific interest in this action.  Third, Plaintiff may litigate its claims elsewhere and get the relief it seeks for the alleged infringement.  Fourth, any relevant witnesses or evidence are likely in foreign countries or other states, so litigating in Colorado is inefficient and would be an unnecessary drain on party resources.  *See id.*  Finally, exercising jurisdiction over Proxima Beta, a Singapore company, would be contrary to the Supreme Court's instruction that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 115 (1987) (citation omitted); *see OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1098 (10th Cir. 1998).  Accordingly, haling Proxima Beta into the Court would both upset

traditional notions of fair play and substantial justice and violate a foreign nation's sovereignty.

Since there is no general or specific personal jurisdiction over Proxima Beta in this forum, Plaintiff's claims must be dismissed.

**B.  The Court Must Dismiss Plaintiff's Claims For Failure To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's claims must also be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Proxima Beta's season title is protected by the First Amendment under both the *Rogers* test and the *Stouffer* test, so there can be no trademark infringement.

**1.  It Is Appropriate For The Court To Consider *Rogers* Here After The Supreme Court's Decision In *Jack Daniel's*.**

The United States Court of Appeals for the Second Circuit's decision in *Rogers v. Grimaldi* weighed public interest in free expression against the likelihood of consumer confusion. 875 F.2d 994, 998 (2d Cir. 1989). The court reasoned that "[b]ecause overextension of Lanham Act restrictions in the area of titles might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict." *Id.* What resulted was the two-pronged *Rogers* test that would "not support application of the [Lanham Act] unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999. Plaintiff's claim fails this test, and the season title is accordingly noninfringing.

In 2019, with "the luxury of thirty years of court decisions applying *Rogers,*" this Court contemplated whether to adopt the *Rogers* test. *Stouffer v. National Geographic Partners, LLC*, 400 F. Supp. 3d 1161, 1178 (D. Colo. 2019). In *Stouffer*, this Court agreed that the "Lanham Act need[ed] a limiting construction to protect First Amendment interest[]," but it did not think that the broad application of *Rogers* and its progeny was appropriate. *Id.* at 1177, 1179. So the *Stouffer*

9

Court devised its own test to determine application of a First Amendment limitation, reasoning that it was appropriate when "the junior user ha[d] a genuine artistic motive for using the senior user's mark[.]" *Id.* at 1178-79 (cleaned up).

*Stouffer* was decided before the Supreme Court addressed *Rogers* in 2023. In *Jack Daniel's Props. Inc. v. VIP Products LLC*, the Supreme Court, like the *Stouffer* court, was concerned with *Rogers* "tak[ing] over much of the world" if applied to all expressive trademarks. 599 U.S. 140, 158 (2023). The Court nevertheless held that restricting *Rogers* to cases where "the defendant has used the mark at issue in a non-source-identifying way" is sufficient to address that concern. *Id.* at 155-56 (cleaned up). The Tenth Circuit and this Court have yet to consider *Rogers* after *Jack Daniel's*. Proxima Beta respectfully requests that the Court do so here. But should the Court apply the *Stouffer* test, the outcome is the same, and the Court should dismiss Plaintiff's claims.

### 2. Proxima Beta's Use Is Protected Under *Rogers*.

#### a. Delta Force Is An Expressive Work.

Video games are expressive works entitled to First Amendment protections. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011)*; Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013) ("Even if *Madden NFL* is not the expressive equal of *Anna Karenina* or *Citizen Kane,* the Supreme Court has answered with an emphatic 'yes' when faced with the question of whether video games deserve the same protection as more traditional forms of expression."). Accordingly, Delta Force is an expressive work.

#### b. Delta Force's Season Title Is Not Source-Identifying.

*Rogers* is properly applied when a mark's use is not source-identifying. *See Jack Daniel's*, 599 U.S. at 156. The Ninth Circuit's discussion in *Mattel, Inc. v. MCA Records, Inc.* helps illustrate this point: "If we see a painting titled 'Campbell's Chicken Noodle Soup,' we're unlikely

to believe that Campbell's has branched into the art business. Nor, upon hearing Janis Joplin croon 'Oh Lord, won't you buy me a Mercedes–Benz?,' would we suspect that she and the carmaker had entered into a joint venture."  296 F.3d 894, 901-902 (9th Cir. 2002).  *See also E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1100-01 (9th Cir. 2008).  ("[a] reasonable consumer would not think a company that owns one strip club in East Los Angeles … also produces a technologically sophisticated video game").  Likewise, here, no reasonable consumer would have seen Delta Force's season three title and thought Plaintiff had ventured into tactical shooter games.

Proxima Beta's use also falls squarely within the parameters established by *Rogers*, as clarified by *Jack Daniel's*, because it is the *title* of an expressive work.  *See Jack Daniel's*, 599 U.S. at 143 ("The Second Circuit created the *Rogers* test *for titles* of 'artistic works' based on its view that such titles have an 'expressive element' implicating 'First Amendment values' and carry only a 'slight risk' of confusing consumers about the 'source or content' of the underlying work.") (emphasis added)*. See also* TMEP § 1202.08: Title of a Single Creative Work (May 2025) (finding that titles of a single work do not act as a trademark) (collecting cases).  Thus, the *Rogers* test can commence.  *See Jack Daniel's*, 599 U.S. at 155-56.

### c.     The Title Has Artistic Relevance To Delta Force Season Three.

Step one of *Rogers* requires that the level of artistic relevance of the title and the underlying work "be above zero."  *E.S.S. Ent. 2000, Inc.,* 547 F.3d at 1100.  Here, Delta Force's third season was titled "Starfall" because the season's storyline centered on satellites that fell from and across the sky like falling stars.  Decl. at ¶ 14.  Accordingly, there is artistic relevance between the title and the underlying work.

### d. The Title Is Not Explicitly Misleading.

Step two requires that there be no "explicit indication, overt claim, or explicit misstatement about the source of the work." *Punchbowl, Inc. v. AJ Press, LLC,* 90 F.4th 1022, 1028 (9th Cir. 2024). "An instance where the sole indication that the plaintiff might be affiliated with the defendant's work is the use of the mark itself is not 'explicitly misleading.'" *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.,* 74 F. Supp. 3d 1134, 1143 (N.D. Cal. 2014). Likewise, where the defendant "explicitly identifies itself … as being responsible for the content[,]" the use is not misleading. *UFO Mag., Inc. v. Showtime Network, Inc.*, No. 22-CV-078-NDF, 2022 WL 16645041, at *5 (D. Wyo. July 21, 2022).

Here, besides use of the term itself, Proxima Beta gave no whiff of an affiliation with Plaintiff. Proxima Beta's use of the title as a season for Delta Force was also very clear: it was frequently coupled with "Season 3," "S:3," or "Delta Force" and appeared in predictable fonts and colors evoking a battle theme. Additionally, season three lasted only a few months. *See Hara v. Netflix, Inc.,* No. 23-3768, 2025 WL 2102547, at *1 (9th Cir. July 28, 2025) (finding that fleeting use, to perform some other expressive function, supported the application of *Rogers*). Accordingly, the title was not explicitly misleading, and Plaintiff does not provide any substantiated allegations to the contrary.

With all requirements for the *Rogers* test met, the Court should apply *Rogers* here, and find that Proxima Beta's use does not infringe Plaintiff's mark under *Rogers* and that any further attempts to amend the complaint are futile. *See, e.g., Hara,* 2025 WL 2102547 at *9.

### 3. Proxima Beta's Use Is Also Protected Under *Stouffer.*

To determine whether to apply First Amendment limitations on Lanham Act liability for expressive works, the *Stouffer* test asks whether "the junior user [had] a genuine artistic motive for

using the senior user's mark[.]" 400 F. Supp. 3d at 1179. Relevant questions include:

1. Do the senior and junior users use the mark to identify the same kind, or a similar kind, of goods or services?
2. To what extent has the junior user added his or her own expressive content to the work beyond the mark itself[?]
3. Does the timing of the junior user's use in any way suggest a motive to capitalize on popularity of the senior user's mark?
4. In what way is the mark artistically related to the underlying work, service, or product?
5. Has the junior user made any statement to the public, or engaged in any conduct known to the public, that suggests a non-artistic motive?
6. Has the junior user made any statement *in private*, or engaged in any conduct *in private*, that suggests a non-artistic motive?

*Id.* (emphasis in original) (cleaned up).

Analyzing the questions in order, first, Plaintiff uses its purported mark for educational resources and activities for those in preschool to the fifth grade. SAC at ¶ 19. Proxima Beta's use was for a season title of a tactical shooter game for teenagers and adults. Despite Plaintiff claiming that both parties' goods include "computer games," *see, e.g.*, *id.* at ¶¶ 1, 11, the parties' goods are not the same or similar kind of goods any more than peek-a-boo and competitive paintball can both be considered games. Second, in addition to the title, Delta Force season three featured expressive content like a new storyline, mission, and engaging visuals. *See also* Decl. at ¶ 4. Third, the timing does not suggest any motive to capitalize on Plaintiff's popularity. Proxima Beta was not attempting to ride the coattails of a turn-of-the-century children's website to promote a short-lived season of a tactical shooter game. *See id.* at ¶¶ 18-19. Fourth, as explained, the title was chosen to match thematic elements of season three, such as satellites falling from and across the sky, so the use is relevant to the underlying work. *Id.* at ¶ 14. Fifth and sixth, Proxima Beta has not made any statements either publicly or privately (and Plaintiff has provided no examples of Proxima Beta having done so) to suggest a non-artistic motive. Proxima Beta did not even

13

know of Plaintiff or its products prior to the suit.  *Id.* at ¶ 18.  Accordingly, under the *Stouffer* test, with all relevant inquiries weighing in Proxima Beta's favor, Proxima Beta did not infringe Plaintiff's mark, and the Court should dismiss Plaintiff's claims.[1]

**C.     The Court Should Also Dismiss Plaintiff's CCPA Claim For Failure To Plead With The Requisite Specificity.**

"To assert a claim under the CCPA, plaintiff must meet the heightened Rule 9(b) pleading standard."  *Overhead Sols., Inc. v. A1 Garage Door Serv., L.L.C.,* No. 19-CV-01741-PAB-NYW, 2022 WL 602864, at *4 (D. Colo. Mar. 1, 2022) (citation omitted).  "Rule 9(b) requires a complaint to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011) (citation and quotation omitted).  Plaintiff alleges in Count III violation of the CCPA.  *See* SAC at ¶¶ 65-71.  But Plaintiff fails to provide the required who, what, when, why, or how.  For example, it provides neither the time of any alleged false representations nor the identity of the party allegedly making false statements (but instead uses group pleading, as discussed below).  Plaintiff also mentions no actual injury, instead putting forth conclusory allegations.  *Id.* at ¶¶ 68-70. These are insufficient, and therefore this claim must also be dismissed for insufficient pleading.

---

[1] Courts recognize that the analysis applied to trademark claims can extend to other claims, including unfair competition.  *See*, *e.g.*, *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052 n.11 (10th Cir. 2021) ("The opinion's discussion of the Lanham Act Section 43(a) claim is applicable to the other two claims on which the district court granted summary judgment: common law service mark infringement and common law unfair competition.").  Because all of Plaintiff's claims are for trademark infringement or derive therefrom, (e.g., the CCPA claim), all claims must be dismissed.

**D.**      **The Court Should Dismiss The SAC As An Impermissible Group Pleading.**

"A pleader must present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted.…" *MAO, Inc. v. PENN Entertainment, Inc.*, No. 1:23-cv-02736-SKC-KAS, Dkt. 89 at *6-7 (D. Colo. July 17, 2025) (citation and quotation omitted) (cleaned up). Plaintiff's SAC breaks this rule by referring to both Proxima Beta and Tencent Holdings as "Tencent." In other words, Plaintiff makes "no distinction as to what acts are attributable to whom," which makes it "impossible for [either individual defendant] to ascertain what particular … acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (reversing denial of motion to dismiss civil rights claims where complaint utilized group pleading). This type of pleading not only violates the notice pleading rules but also Plaintiff's obligation to provide specific personal jurisdictional facts as to each defendant. *See id.* at 1250 (reversing and remanding with instructions to dismiss where "it is impossible for any of these individuals to ascertain what particular … acts they are alleged to have committed.").

**CONCLUSION**

The Court should dismiss all claims against Proxima Beta and deny leave to amend.

Dated: September 2, 2025

                               *s/ Eric Ball*
                               Eric Ball
                               FENWICK & WEST LLP
                               801 California St., Mountain View, CA 94041
                               Tel: 650.988.8500; eball@fenwick.com
                               Attorneys for Defendants *TENCENT HOLDINGS LIMITED and PROXIMA BETA PTE. LIMITED*

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), counsel for Defendant Tencent Holdings Limited conferred with counsel for Plaintiff Starfall Education Foundation on June 10, 2025 to discuss the issues raised in this motion.

*s/ Eric Ball*
Eric Ball

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record in this case.

*s/ Eric Ball*
Eric Ball