**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00475-PAB-SBP

STARFALL EDUCATION FOUNDATION,

Plaintiff,

v.

TENCENT HOLDINGS LIMITED and
PROXIMA BETA PRIVATE LIMITED,

Defendants.

---

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY**

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Plaintiff Starfall Education Foundation's ("Starfall") Motion for Leave to Conduct Limited Jurisdictional Discovery (ECF No. 43) ("Motion"). Starfall seeks leave to serve fifteen requests for production ("RFPs") and to take two Federal Rule of Civil Procedure 30(b)(6) depositions on issues bearing on the court's personal jurisdiction over Defendants Tencent Holdings Limited ("Tencent") and Proxima Beta Pte. Limited ("Proxima Beta"), who have moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF Nos. 37, 39. Defendants oppose the Motion, arguing that Starfall has not made the requisite threshold showing, that the requested discovery amounts to a fishing expedition, that discovery would not alter the jurisdictional analysis, and that Starfall fails to state a claim. ECF No. 48. Starfall replied. ECF No. 49. The Motion was

referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). *See* ECF Nos. 11 (order referring case), 44 (motion referral order).

Having reviewed the briefing, declarations, exhibits, and applicable law, the court finds that oral argument would not materially assist in resolving the Motion. The court therefore respectfully **GRANTS in part** and **DENIES in part** Starfall's Motion, authorizing narrow, targeted jurisdictional discovery limited to the issues of specific personal jurisdiction arising from Defendants' alleged operation, control, and monetization of the Delta Force game and the Level Infinite Pass ecosystem, as set forth below.

## BACKGROUND

Starfall is a Colorado nonprofit corporation based in Boulder that alleges it has, for more than twenty years, provided educational entertainment to children through its website, apps, and related products. ECF No. 32-2 ¶¶ 11, 16-20. Starfall initiated this action on February 12, 2025, asserting trademark infringement and related claims arising from Defendants' alleged use of the "Starfall" mark in a limited, now-inactive season of the video game Delta Force (the "Starfall Season"). ECF No. 32-2 ¶¶ 7-10, 39-40, 45-51; ECF No. 1. Starfall contends that Defendants used the Starfall mark without authorization in connection with the promotion and operation of that season, causing consumer confusion and injury to Starfall's trademark rights. ECF No. 32-2 ¶¶ 45-51, 53-64.

The operative pleading (ECF No. 32-2) ("Second Amended Complaint" or "SAC") names Tencent and Proxima Beta as Defendants. ECF No. 32-2 ¶¶ 12-13. Tencent is a Cayman Islands corporation with its principal place of business in Shenzhen, China, and Proxima Beta is a Singaporean entity with its principal place of business in Singapore. ECF No. 32-2 ¶ 12; ECF

No. 39-1 ¶ 2; ECF No. 37-1 ¶ 6. Starfall alleges that Defendants, directly or through agents or related entities, used the Starfall mark to promote and facilitate access to Delta Force through the Level Infinite/Level Infinite Pass ecosystem, including through playdeltaforce.com and related media. ECF No. 32-2 ¶¶ 6-8, 38-43, 45-51; ECF No. 43 at 3-4.

On September 2, 2025, Defendants moved to dismiss the Second Amended Complaint, arguing, among other things, that dismissal is warranted under Rule 12(b)(2) because the court lacks personal jurisdiction over them. ECF Nos. 37, 39. In support of their jurisdictional challenge, Defendants submitted declarations averring that Tencent is a holding company that does not operate or market Delta Force and that Proxima Beta, the publisher of the game, maintains no offices, property, or employees in Colorado; does not specifically target marketing of Delta Force to Colorado; and does not inquire into or track players by U.S. state. ECF No. 39-1 ¶¶ 3-5; ECF No. 37-1 ¶¶ 7, 10-13.

Starfall then filed the present Motion seeking leave to conduct limited jurisdictional discovery before responding substantively to the Rule 12(b)(2) motions. ECF No. 43 at 1-2. Starfall contends that the court may exercise specific personal jurisdiction over both Defendants and that the Rule 12(b)(2) motions raise factual questions that cannot be resolved on the current record without limited discovery. ECF No. 32-2 ¶¶ 14-15; ECF No. 43 at 2, 5-12. Starfall also seeks discovery related to general personal jurisdiction over Tencent, ECF No. 43 at 2, but the Motion seeks discovery principally directed to specific jurisdiction and to attribution of forum contacts to Tencent and Proxima Beta, ECF No. 43 at 5-12.

To support its jurisdictional theories, Starfall submits two declarations from Marc Buchanan, the Publications and Outreach Manager at the Starfall Education Foundation, who

attests that he accessed playdeltaforce.com, completed a pre-registration process for Delta Force, received a confirmation email referencing a Level Infinite Pass, used that pass to access games from Colorado, and made purchases through flows branded with identifiers including "Midasbuy" and "Level Infinite." ECF No. 43-16 ¶¶ 3-7. Mr. Buchanan also asserts that, while purchasing "Delta Coins," a type of digital token used in the Delta Force game, his address was auto-populated during the checkout process. ECF No. 49-1 ¶¶ 8-13. Starfall also submits two declarations from consultant David Drews,[1] who describes public trademark and domain-name records associating Level Infinite, Level Infinite Pass, Arena Breakout, Honor of Kings, Midasbuy, and domains such as levelinfinite.com, arenabreakout.com, proximabeta.com, and playdeltaforce.com with Tencent and/or Proxima Beta or affiliated entities. ECF No. 43-1 ¶¶ 3-16 & Exs. 1-6, 10-14. Mr. Drews also references various corporate financial records that he asserts reveal some level of ownership and/or control by Tencent over the Delta Force game. ECF No. 49-4 ¶¶ 4-12. Starfall argues that Defendants' corporate structure and allocation of responsibilities among related entities is intended to obscure which entity or entities controlled the conduct at issue, making limited jurisdictional discovery necessary. ECF No. 43 at 8-14; ECF No. 43-1 ¶¶ 4-9, 13-17.

Defendants oppose jurisdictional discovery, arguing that Starfall has not carried its burden to demonstrate a sufficient factual predicate or prejudice and that the requested discovery is overbroad and amounts to a fishing expedition. ECF No. 48 at 2-4, 7-8, 12. Defendants rely on their declarations to assert that they lack traditional indicia of presence in Colorado and that

[1] Mr. Drews states that he was retained by Starfall Education Foundation to collect data in connection with the instant case. ECF No. 43-1 ¶ 2.

Delta Force was marketed globally rather than in Colorado, specifically, such that any Colorado contacts are incidental and insufficient to support personal jurisdiction or to justify discovery. ECF No. 48 at 4-10; ECF No. 37-1 ¶¶ 7-13; ECF No. 39-1 ¶¶ 3-7. Defendants also argue that, alternatively, this court should dismiss the SAC under Rule 12(b)(6) because Starfall fails to state a claim, "making discovery futile." ECF No. 48 at 14-15.

## LEGAL STANDARDS

### A. Personal Jurisdiction

"A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 430-31 (2007). Because Defendants challenge personal jurisdiction under Rule 12(b)(2), the court addresses the request for jurisdictional discovery relevant to that challenge. *See id*.; Fed. R. Civ. P. 12(b)(2).

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction. The plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendants. *See Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). Where the court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086,

1091 (10th Cir. 1998). In considering this question, the court must accept all well-pleaded facts as true and must resolve any factual disputes in favor of the plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

To establish jurisdiction over a nonresident defendant, a plaintiff must show that the exercise of jurisdiction is authorized under the relevant state long-arm statute and does not offend due process. *Wenz*, 55 F.3d at 1506 (10th Cir. 1995). Because the Colorado Supreme Court has determined that Colorado's long-arm statute, Colorado Revised Statute § 13-1-124, is coextensive with due process requirements, *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002), the inquiry is thus simplified into one basic question: whether the exercise of personal jurisdiction comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution. *AST Sports Sci.*, 514 F.3d at 1057.

However, even if this test is met, a court must still consider whether "the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091. In this inquiry the court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* at 1095.

Generally, a corporation is subject to general jurisdiction in its place of incorporation and principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Those loci, however, are not the only forums where a corporation can be held to be subject to general personal jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or

foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). However, this standard will be met only in "exceptional case[s]." *Daimler AG*, 571 U.S. at 139 n.19.

On the other hand, "[t]o determine when *specific* jurisdiction is properly exercised, courts are to assess two requirements: (1) that the defendant has 'purposefully directed [its] activities at residents of the forum,' and (2) that the suit 'arise out of or relate to those activities.'" *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (emphasis added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

**B. Jurisdictional Discovery**

The plaintiff bears the burden of establishing personal jurisdiction, but at the preliminary stages of the litigation, this burden is light. *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In the Tenth Circuit, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). Whether to allow jurisdictional discovery is within "the broad discretion" of the trial court. *Id.*

But the court abuses its discretion if the denial of limited discovery results in prejudice to a litigant. *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). "To obtain jurisdictional

discovery, a plaintiff must 'present a sufficient factual predicate for the establishment of personal jurisdiction.'" *Gordon * Howard Assocs. v. Lunareye, Inc.*, No. 13-cv-01829-CMA-MJW, 2013 WL 5637678, at *4 (D. Colo. October 15, 2013) (citing *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guaranty Bank & Tr. Co.*, No. 05-cv-00968-REB-BNB, 2006 WL 1897173, at *4 (D. Colo. 2006)). Jurisdictional discovery is not appropriate where there is only a "low probability" that additional discovery would lead to facts sufficient to support a finding of personal jurisdiction over the defendant. *See Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004).

## ANALYSIS

Starfall seeks leave to serve fifteen RFPs and to take two Rule 30(b)(6) depositions on issues bearing on personal jurisdiction. ECF Nos. 43, 49. Defendants oppose the Motion, arguing that Starfall has not controverted Defendants' declarations and instead seeks overbroad discovery into unrelated products, entities, and markets, including foreign third parties. ECF No. 48.

Before continuing to the issue of personal jurisdiction, the court must address Defendants' offer to assess whether Starfall has plausibly stated a claim in its SAC. The court, respectfully, must decline this invitation. As the Tenth Circuit has observed, "a ruling that assumes . . . the district court's jurisdiction is necessarily incomplete. In fact, if the district court's assumptions were wrong, the 'complete' ruling is no ruling at all." *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 n.5 (10th Cir. 2016) (cleaned up). So too here. The court will not engage in a 12(b)(6) analysis of Starfall's claims until it is assured that it has the jurisdiction to do so in the first instance. To do otherwise would be to put the cart in front of the horse. Accordingly, the court turns to Starfall's jurisdictional arguments. Starfall invokes both

general jurisdiction over Tencent and specific jurisdiction over both Tencent and Proxima Beta. The court addresses each theory in turn before determining the proper scope of jurisdictional discovery, if any.

**A. General Jurisdiction Over Tencent**

Starfall asserts that the court has general jurisdiction over Tencent based on its size and worldwide operations, including its diverse business holdings and substantial revenue. ECF No. 43 at 2. Thus, Starfall seeks broad discovery into five years' worth of revenues remitted to "The Tencent Group" by Colorado residents, as well as the identities of Colorado-based users of multiple games and services. ECF No. 43-17. Starfall believes that this discovery will reveal the volume of Tencent's business in Colorado, which will then support its general-jurisdiction argument. ECF No. 43 at 10-11. However, even accepting Starfall's factual assertions as true, the general-jurisdiction theory fails as a matter of law.

Tencent is incorporated in the Cayman Islands and has its principal place of business in China. The Supreme Court has made clear that, save for "exceptional" cases, a corporation is "at home" only in those two paradigm forums. *Daimler*, 571 U.S. at 137-39 n.19; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413-14 (2017). In *BNSF*, the Court held that even a railroad with over 2,000 miles of track and more than 2,000 employees in Montana was not "so heavily engaged in activity in Montana as to render it essentially at home in that State." 581 U.S. at 414 (internal quotation and citation omitted). Starfall does not suggest that Tencent's operations have been relocated to Colorado or that Colorado has become the "center" of Tencent's corporate life in any comparable way.

Thus, even if Starfall were provided every document it seeks regarding Colorado revenues and users across all Tencent-affiliated products over a five-year period, such evidence could not plausibly transform Tencent—a global company incorporated in the Cayman Islands and headquartered in China—into a company "essentially at home" in Colorado under *Daimler* and *BNSF*. Because the allegations, even if proven, would not establish general jurisdiction, discovery directed solely at bolstering a general-jurisdiction theory is unwarranted. *Cont'l Cas. Co. v. Arrowrock, LLC*, No. 19-cv-03631-DDD-MDB, 2022 WL 17975484, at *3 (D. Colo. Dec. 28, 2022) ("[J]urisdictional discovery cannot be used 'as a fishing expedition' but instead must be targeted at 'need[ed] documents to defeat' a motion to dismiss." (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010))); *Gordon * Howard*, 2013 WL 5637678, at *4 ("[M]erely developing and selling hardware falls far short of demonstrating that Defendant's activities in Colorado were so 'continuous and systematic' that it was 'at home' there."). Starfall's motion is therefore denied to the extent it seeks jurisdictional discovery aimed at establishing general jurisdiction over Tencent.[2]

In sum, because the allegations, even if supplemented by discovery, could not plausibly render Tencent "essentially at home" in Colorado, the court denies discovery aimed at general jurisdiction as futile as a matter of law.

---

[2] Starfall does not argue that Proxima Beta is "at home" in Colorado, and nothing in the record suggests an exceptional case as to Proxima Beta. Proxima Beta is incorporated in Singapore and maintains its principal place of business there. *See* ECF No. 37-1 ¶¶ 2-3. Starfall identifies no facts—and the record discloses none—that could plausibly render Proxima Beta "essentially at home" in Colorado within the meaning of *Daimler* and its progeny. *See Daimler*, 571 U.S. at 137-39; *BNSF*, 581 U.S. at 413-14. Accordingly, to the extent Starfall's Motion or proposed discovery could be construed as seeking to establish general jurisdiction over Proxima Beta, that discovery is unwarranted and is denied.

**B. Specific Jurisdiction Over Tencent and Proxima Beta**

The question remains whether Starfall has made an adequate showing to justify targeted discovery as to specific jurisdiction over Tencent and Proxima Beta. Starfall's claims arise from the alleged use of the Starfall mark in connection with the Delta Force game and related online activity. Specific jurisdiction requires that each defendant "purposefully directed" its activities at Colorado and that Starfall's claims "arise out of or relate to" those activities. *Old Republic*, 877 F.3d at 909; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021).

Starfall's evidence includes: (1) Mr. Buchanan's Colorado-based pre-registration for Delta Force through an interactive website, receipt of a Level Infinite Pass, subsequent use of that pass to log in to games, and Colorado-based purchases of digital goods (including the automatic population of a Colorado billing address during the purchase process without user input), ECF No. 43-16 ¶¶ 4-7; ECF No. 49-1 ¶¶ 8-12; (2) privacy policies for Level Infinite and Delta Force that specifically reference Colorado law, *see* ECF No. 49 at 6; ECF No. 49-5 at 33; ECF No. 49-2 at 1, 28; and (3) Mr. Drews's compilation of domain and trademark records tying the Level Infinite Pass, Arena Breakout, Honor of Kings, Midasbuy, and relevant domains (proximabeta.com, playdeltaforce.com, arenabreakout.com, levelinfinite.com) to Tencent and Proxima Beta, ECF No. 43-1 ¶¶ 5-16; ECF Nos. 43-2 to 43-15 (exhibits).

Taken together and viewed in the light most favorable to Starfall, these materials support the reasonable inference that: (1) a Colorado resident used a Level Infinite Pass to access Delta Force and other games, and made purchases, through interactive systems controlled, owned, or licensed by Defendants or their wholly controlled affiliates; and (2) the identity and roles of the entities that own and control the relevant domains and marks—and thereby direct and benefit

from this activity—are within Defendants' exclusive knowledge and are not fully reflected in public records. Starfall has therefore shown both a factual predicate that targeted discovery may lead to probative evidence on specific jurisdiction and prejudice if discovery is denied, particularly where the jurisdictional facts concern Defendants' internal activities and records uniquely within their possession and not otherwise accessible without discovery. *WebNX, Inc. v. Cummins Inc.*, No. 1:23-CV-00055-JNP-JCB, 2024 WL 4165736, at *3-4 (D. Utah Sept. 12, 2024); *see also Budde*, 511 F.2d at 1035; *Sizova*, 282 F.3d at 1326; *Centennial Fence Supply Co., LLC v. Toolguy.com*, No. 1:23-cv-02825-DDD-SBP, 2025 WL 1382997, at *2 (D. Colo. May 13, 2025).

Defendants argue that Starfall is not entitled to jurisdictional discovery because it has not affirmatively controverted the declarations submitted in support of Defendants' Rule 12(b)(2) motions. The court disagrees. At the jurisdictional-discovery stage, a plaintiff is not required to disprove a defendant's declarations or to establish personal jurisdiction on the existing record. Rather, the inquiry is whether the plaintiff has identified specific, nonspeculative facts suggesting that additional discovery is likely to yield information material to the jurisdictional analysis. *Sizova*, 282 F.3d at 1326. Where, as here, the relevant jurisdictional facts concern Defendants' internal activities and records not otherwise accessible without discovery, denial of limited discovery would be prejudicial. *WebNX*, 2024 WL 4165736, at *3-4.

Here, Defendants' declarations deny traditional indicia of physical presence in Colorado, but they do not resolve which entity or entities control the interactive platforms, domain names, account systems, and monetization pathways through which Colorado-based users accessed *Delta Force* and related services. Tencent's declaration asserts that it is a holding company and

does not itself operate or market *Delta Force*, while Proxima Beta's declaration denies Colorado-directed operations and state-level tracking. ECF No. 39-1 ¶¶ 3-5; ECF No. 37-1 ¶¶ 7, 10-13. But the contacts discussed in Mr. Buchanan's declarations are not hypothetical; they are concrete examples of Colorado-based user interactions and transactions mediated by branded systems with a demonstrable link to Defendants. Thus, it is beyond dispute that *some* contacts have occurred between Colorado residents and those systems, and that Defendants have *some* level of connection with those systems. These unresolved facts bear directly on purposeful direction and the attribution of forum contacts and are not answered by Defendants' sworn statements.

Moreover, "there is a certain unfairness to a process that would allow affidavits from one side without allowing at least some corresponding adversarial opportunity to probe the underlying assertions contained in those affidavits." *Am. Fam. Mut. Ins., Co. v. Robert Bosch, LLC*, No. 23-cv-00455-DDD-NRN, 2023 WL 8479021, at *7 (D. Colo. Dec. 7, 2023) (citing *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 500 U.S. 305 (2010)). In these circumstances, a more satisfactory showing of the jurisdictional facts is necessary, and narrowly tailored jurisdictional discovery is appropriate. *See Sizova*, 282 F.3d at 1326; *WebNX*, 2024 WL 4165736, at *3-4 (ordering jurisdictional discovery where evidence relevant to purposeful direction was uniquely within defendants' possession).

Defendants further argue that Mr. Buchanan's declaration reflects only unilateral activity by a Colorado resident and therefore cannot justify jurisdictional discovery. That argument misapprehends the role of Mr. Buchanan's declaration at this stage. First, although it is true that "a plaintiff's or third party's unilateral activities cannot establish minimum contacts," *Ubel v.*

*Progressive Direct Ins. Co.*, No. 20-cv-00204-RM-NYW, 2020 WL 5803323, at *5 (D. Colo. June 9, 2020), a plaintiff need not show minimum contacts in order to obtain jurisdictional discovery, for obvious reasons. And second, Mr. Buchanan does not merely attest to passively accessing a globally available website. He describes interactive, commercial transactions conducted through branded systems that required account creation, authentication through Level Infinite Pass, and completion of in-game purchases during which his Colorado billing address was auto-populated. *See* ECF No. 43-16 ¶¶ 4-7. When viewed in conjunction with the trademark and domain-ownership evidence submitted by Mr. Drews, these facts plausibly suggest that Defendants' digital platforms facilitated Colorado-based access and transactions in a manner that is not wholly attributable to unilateral consumer activity, warranting limited jurisdictional discovery. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020); *Otter Prods., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 6888276, at *2-3 (D. Colo. Dec. 18, 2019) (finding purposeful direction where defendants operated an online storefront and made repeated sales to Colorado residents); *Water Pik, Inc. v. H20Floss*, No. 17-cv-02082-CMA-MJW, 2018 WL 1706276, at *2-3 (D. Colo. Apr. 9, 2018) (allowing jurisdictional discovery where plaintiff provided evidence that a Singapore corporation exported allegedly infringing products and "placed the Accused Products into the stream of commerce" with the intention of selling to U.S. customers, and a portion of the company's sales were in Colorado); *Centennial Fence Supply Co.*, 2025 WL 1382997, at *4 (allowing jurisdictional discovery where plaintiff offered proof that defendant had sold 12 items in four years to Colorado residents).

In sum, the preceding facts plausibly suggest that one or both Defendants, through controlled entities and integrated systems, have deliberately exploited the Colorado market via

interactive, commercial online activities that involve the accused Delta Force season, and that Starfall's claims "relate to" those contacts. *See Old Republic*, 877 F.3d at 905-08 (discussing "deliberate exploitation" and "harmful effects" theories); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1223-27 (10th Cir. 2021) (telemarketing into Colorado); *Otter Prods.*, 2019 WL 6888276, at *2-3 (online sales into forum). However, "information is needed to resolve, 'either favorably or unfavorably, the disputed personal jurisdiction issues in this case.'" *Centennial Fence Supply Co.*, 2025 WL 1382997, at *3 (quoting *Water Pik*, 2018 WL 1706276, at *2-3).

At the same time, the breadth of Starfall's requests far exceeds what is reasonably necessary to test specific jurisdiction. Requests seeking five years of Colorado sign-ups for "Play Delta Force, Honor of Kings, Arena Breakout, plus any other videogames distributed by Defendants," and five years of Colorado revenues to "one or more members of The Tencent Group," sweep in multiple products, nonparty entities, and extended time periods beyond the alleged infringement window. Such requests are disproportionate and inconsistent with the requirement that jurisdictional discovery be "targeted at needed documents to defeat a motion to dismiss." *Arrowrock*, 2022 WL 17975484, at *3 (internal quotation and citation omitted); *Breakthrough Mgmt. Grp.*, 629 F.3d at 1190.

Defendants rely heavily on their declarations asserting that Tencent is a holding company with no offices, employees, or operations in Colorado, and that Proxima Beta maintains no offices or employees in Colorado, does not engage in Colorado-targeted marketing, and does not track players or revenue by U.S. state. ECF No. 39-1 ¶¶ 3-5; ECF No. 37-1 ¶¶ 7, 10-13. At this stage, the court does not finally resolve disputed jurisdictional facts; the question is whether Starfall has made a threshold showing that limited discovery is likely to yield information

material to purposeful direction, attribution of forum contacts to these Defendants, and the "arise out of or relate to" requirement. *WebNX*, 2024 WL 4165736, at *2; *see also Sizova*, 282 F.3d at 1326; *Centennial Fence Supply*, 2025 WL 1382997, at *2. The court concludes that Starfall has made that showing.

Accordingly, the court will permit limited jurisdictional discovery narrowly tailored to (1) Colorado-facing activity related to Delta Force and the associated Level Infinite Pass flows during a cabined window surrounding the alleged infringement, and (2) the ownership, control, and licensing of specific domains and marks used in connection with Delta Force and Level Infinite Pass. The court will not authorize broad, half-decade, multi-product discovery into "The Tencent Group" or unrelated products such as WeChat.

### C. Scope of Permitted Jurisdictional Discovery

Starfall's Exhibit C requests are granted in part and denied in part, as set forth below. To the extent this Order narrows any definition or request in Exhibit C, that narrowed construction governs.

#### 1. Requests Denied as Drafted

The following requests are denied as drafted:

- **Request Nos. 4-6**. These seek five years of data concerning Colorado users of Delta Force, Honor of Kings, Arena Breakout, and "any other videogames distributed by Defendants," as well as five years of gross revenues paid or remitted by Colorado residents to "one or more members of The Tencent Group." These requests are overbroad in product scope, temporal scope, and entity scope,

and are not narrowly tailored to the Delta Force season or to the particular Defendants before the court.

The court also declines to authorize jurisdictional discovery directed solely at supporting general jurisdiction over Tencent based on its overall size, number of users, or aggregate Colorado revenues for all products

**2. Requests Granted as Narrowed**

For purposes of this Order, the "Relevant Period" is **January 1, 2024, through December 31, 2025**, encompassing the accused Starfall Season and a modest, targeted margin surrounding it.[3] All numerical discovery authorized below shall be in the form of aggregate counts or revenues and shall not require production of user-level personally identifying information. The discovery authorized in this Order is limited to issues of specific personal jurisdiction and does not extend to the merits of Starfall's claims. The following requests are granted, subject to the limitations stated:

- **Colorado-Facing Delta Force / Level Infinite Activity (January 1, 2024, through December 31, 2025)**
  - **Request No. 1** is granted to the extent it seeks documents sufficient to show the number of persons associated with Colorado (by billing address, account address,

[3] This period fully encompasses the alleged infringing "Starfall Season," which Defendants state ran from January 18, 2025, through April 20, 2025. ECF No. 48 at 15. The limited extension beyond those dates permits capture of pre-season registration activity (including pre-registrations and Level Infinite Pass account creation) and any limited post-season transactions or access directly tied to the Level Infinite Pass ecosystem that may bear on the specific-jurisdiction analysis. This focused window ensures proportionality without extending unnecessarily beyond the core infringement period.

or comparable geolocation indicator) who, between January 1, 2024, and December 31, 2025, (a) pre-registered for Delta Force and/or (b) created a Level Infinite Pass account that was used in connection with Delta Force.

- **Request No. 2** is granted to the extent it seeks documents sufficient to show the number of Colorado-associated persons who, January 1, 2024, and December 31, 2025, used a Level Infinite Pass account to log into Delta Force, and, to the extent such logins cannot reasonably be segregated, any associated Level Infinite Pass flows used to access Delta Force.
- **Request No. 3** is granted to the extent it seeks documents sufficient to show the number of Colorado-associated persons who, between January 1, 2024, and December 31, 2025, used a Level Infinite Pass account to log in to pass.levelinfinite.com in connection with Delta Force.
- Although **Starfall's Requests Nos. 5 and 6** are denied as drafted, defendants shall, in lieu of those requests, produce documents sufficient to show the aggregate gross revenue attributable to Colorado-associated users for (a) Delta Force, and (b) Level Infinite Pass transactions used to access or purchase Delta Force-related content, during the period of January 1, 2024, and December 31, 2025.

- **Ownership, Control, and Licensing of Key Domains and Marks (January 1, 2024, through Present)**
  - **Request No. 10** is granted to the extent it seeks documents sufficient to show the chain of ownership, control, and licensing between Tencent Computer, Tencent,

Proxima Beta, and any intermediary or “pass-through” entity for the domain proximabeta.com, for the period of January 1, 2024, to the present, insofar as that domain is used in connection with Delta Force, Level Infinite Pass, or the pass.levelinfinite.com login and store functions.

- **Request No. 11** is granted to the extent it seeks documents sufficient to show the chain of ownership, control, and licensing between DNStination Inc. (or its successor registrant or beneficial owner), Proxima Beta, Tencent, and any intermediary or “pass-through” entity for the domain playdeltaforce.com, for the period of January 1, 2024, to the present, insofar as that domain is used in connection with Delta Force and the “Starfall” season.
- **Request No. 12** is granted to the extent it seeks documents sufficient to show who owns and licenses the domain arenabreakout.com and how that domain has been licensed or otherwise used between Tencent, Proxima Beta, and any intermediary or “pass-through” entities in connection with Delta Force or access to Delta Force through Level Infinite Pass, for the period of January 1, 2024, to the present.
- **Request No. 13** is granted to the extent it seeks documents sufficient to show who owns and licenses the ARENA BREAKOUT and ARENA BREAKOUT INFINITE marks (U.S. Reg. Nos. 7,270,901 and 7,575,861) and how those marks have been licensed or used between Tencent, Proxima Beta, and any intermediary or “pass-through” entities in connection with Delta Force or access to Delta Force through Level Infinite Pass, for the period of January 1, 2024, to the present.

- **Request No. 14** is granted to the extent it seeks documents sufficient to show who owns and licenses the LEVEL INFINITE and LEVEL INFINITE PASS marks (including U.S. Reg. No. 6,855,166 and the pending LEVEL INFINITE PASS application) and how those marks have been licensed or used between Proxima Beta, Tencent, and any intermediary or "pass-through" entities in connection with Delta Force, Level Infinite Pass, and pass.levelinfinite.com, for the period of January 1, 2024, to the present.
- **Request No. 15** is granted to the extent it seeks documents sufficient to show who owns and licenses the HONOR OF KINGS marks (U.S. Reg. Nos. 7,434,078, 7,627,728, and 7,856,052) and how those marks have been licensed or used between Tencent, Proxima Beta, and any intermediary or "pass-through" entities in connection with Delta Force or access to Delta Force through Level Infinite Pass, for the period of January 1, 2024, to the present.

In all instances, Defendants may satisfy these requests by producing "documents sufficient to show" the relevant relationships and need not produce every underlying agreement where duplicative. Nothing in this Order authorizes discovery into products, domains, or marks unrelated to Delta Force, Level Infinite Pass, or the integrated ecosystem used to offer and access the allegedly infringing Delta Force season.

**3. Requests Granted as Drafted**

**Requests Nos. 7, 8, and 9** are granted as drafted.

#### 4. Testimonial Jurisdictional Discovery[4]

At this stage, **no Rule 30(b)(6) depositions are authorized**. Starfall must first seek the information described below through written interrogatories or sworn declarations. Only if, after good-faith conferral, those written responses are insufficient may Starfall move for leave to proceed with a narrowly tailored Rule 30(b)(6) deposition limited to: (1) authenticating and explaining documents produced in response to the permitted jurisdictional requests; (2) identifying which entity or entities (Tencent, Proxima Beta, or any wholly controlled affiliate) publish or distribute Delta Force, operate the Level Infinite Pass login and store functions used to access Delta Force, and receive the economic benefit of Delta Force-related transactions in the United States; and (3) describing, at a high level, the methods used to associate users and transactions with Colorado for purposes of counting users and revenues (e.g., billing address, account address, or comparable geolocation data). In weighing any future request for depositions, the court will apply the comity factors identified in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 544 n.28 (1987), including the importance of the information, the specificity of the request, the availability of alternative means, and any foreign-law constraints such as China's counter-espionage, data-security, and personal-information statutes.

## CONCLUSION

[4] Consistent with Rule 26(b)(1), the court has tailored this discovery to be proportional to the needs of the case, particularly in light of Defendants' status as foreign companies and the cross-border data and comity concerns they raise.

For the foregoing reasons, **IT IS ORDERED**[5] as follows:

1. Plaintiff Starfall's Motion for Leave to Conduct Limited Jurisdictional Discovery (ECF No. 43) is **GRANTED IN PART** and **DENIED IN PART**.
2. The Motion is **GRANTED** to the extent set forth in Section D of this Order. Starfall may serve narrowly tailored written discovery confined to the categories identified therein and directed solely to issues of specific personal jurisdiction.
3. The Motion is **DENIED** to the extent it seeks discovery aimed at establishing general personal jurisdiction over Tencent or broad discovery into unrelated products, markets, or non-party affiliates.
4. **Within seven (14) days** of the entry of this Order, Starfall may serve revised jurisdictional discovery requests consistent with Section D of this Order.[6]
5. **Within thirty-five (35) days** after service of such requests, Defendants shall serve written responses and produce responsive, nonprivileged documents.

---

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

[6] Starfall also requests that the court hold a status conference to address the timing and scope of jurisdictional discovery. In light of the court's rulings in this Order, which narrowly define the permissible discovery and establish deadlines for completion and subsequent briefing, the court finds that a status conference is unnecessary at this time. The request for a status conference is therefore denied without prejudice.

6. **No Rule 30(b)(6) depositions are authorized at this time.** Any request for testimonial jurisdictional discovery must be supported by a specific showing of good cause after completion of the written discovery authorized herein.

DATED: August 20, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge